**In re Oliver L. NORTH, et al. (Dwyer Fee Application).**

**Division No. 86–6.**

United States Court of Appeals, District of Columbia Circuit.

Division for the Purpose of Appointing Independent Counsels Ethics in Government Act of 1978, as Amended.

Aug. 8, 1997.

Before: SENTELLE, Presiding Judge, BUTZNER and FAY, Senior Circuit Judges.

### ORDER

PER CURIAM.

This matter coming to be heard and being heard before the Special Division of the Court upon the application of William Dwyer for reimbursement of attorneys' fees and costs pursuant to section 593(f) of the Ethics in Government Act of 1978, as amended, 28 U.S.C. § 591 *et seq.* (1988 and Supp. V 1993), and it appearing to the court for the reasons set forth more fully in the opinion filed contemporaneously herewith, that the motion is in part well taken, it is hereby

**ORDERED, ADJUDGED,** and **DE-CREED** that the United States reimburse William Dwyer for attorneys' fees and expenses he incurred during the investigation by Independent Counsel Lawrence E. Walsh in the amount of $8400 this 8th day of August, 1997.

Division for the Purpose of Appointing Independent Counsels Ethics in Government Act of 1978, as Amended.

Opinion for the Special Court filed PER CURIAM.

### ON APPLICATION FOR ATTORNEYS' FEES

PER CURIAM:

William Dwyer ("Dwyer") petitions this Court under section 593(f) of the Ethics in Government Act of 1978, as amended, 28 U.S.C. § 591 *et seq.* (1988 and Supp. V 1993), for reimbursement of attorneys' fees he incurred during and as a result of the Iran/Contra investigation conducted by Independent Counsel ("IC") Lawrence E. Walsh. After considering Dwyer's petition we find that he is entitled to an award of attorneys' fees in the amount of $8400.

### Background

During the time that the events which constituted the Iran/Contra matter[1] took place, Lieutenant Colonel Oliver North

sought help from the Drug Enforcement Agency ("DEA") in rescuing hostages held by a terrorist group in Lebanon. For use in this operation North was given considerable sums of money by H. Ross Perot, the Central Intelligence Agency, the DEA, and others. The funds were to be used partly to buy information regarding the hostages from informants in Lebanon. To this end, North recruited the services of William Dwyer, a DEA agent. IC Walsh, during his investigation of Iran/Contra, investigated the possible misuse of the Lebanon funds by North and Dwyer.

After the Independent Counsel's investigation, Dwyer petitioned the court for reimbursement of attorneys' fees incurred during this time period. In his original petition he prayed for reimbursement in the amount of $65,577.48; in his "Reply to Justice Department's Comment" he requested $53,548.23; finally, in the "Response of Petitioner to the Former Independent Counsel's Evaluation" ("Response") he asked to "be awarded fifty percent of the hourly fees ... and fifty percent of the out-of-pocket charges" incurred.

### Analysis

■ Section 593(f)(1) of the Independent Counsel statute provides:

> Upon the request of an individual who is the subject of an investigation conducted by an independent counsel pursuant to this chapter, the division of the court may, if no indictment is brought against such individual pursuant to that investigation, award reimbursement for those reasonable attorneys' fees incurred by that individual during that investigation which would not have been incurred but for the requirements of this chapter.

28 U.S.C. § 593(f)(1). To obtain an attorneys' fees award under the statute a petitioner must show that the following requirements are met:

1) the petitioner is a "subject" of the investigation;

*(Shultz Fee Application),* 8 F.3d 847, 849 (D.C.Cir. Spec. Div.1993) (per curiam).

---

**1.** The facts of the Iran/Contra investigation are generally collected in cases cited in *In re North*

2) the fees were incurred "during" the investigation;

3) the fees would not have been incurred "but for" the requirements of the Act; and

4) the fees are "reasonable."

*In re Mullins (Tamposi Fee Application)*, 84 F.3d 1439, 1441 (D.C.Cir. Spec. Div.1996) (per curiam). We will address each of these requirements in turn.

### A. "Subject" Status

■ We have previously defined the term "subject" as a person whose conduct is within the scope of the independent counsel's investigation such that "the Independent Counsel might reasonably be expected to point the finger of accusation" at him. *In re North (Dutton Fee Application)*, 11 F.3d 1075, 1078 (D.C.Cir. Spec. Div.1993) (per curiam); *see also Shultz*, 8 F.3d at 850. Although no criminal charges were sought against Dwyer, IC Walsh investigated him for possible misuse of funds and therefore, according to IC Walsh, Dwyer "could reasonably have believed he was a subject of my investigation." Report of Independent Counsel Lawrence E. Walsh Regarding Fee Application of William Dwyer at 2–3, In Re: Oliver L. North, et al. (March 10, 1997) (Div. No. 86–6) (hereinafter "Report of IC").

Additionally, in *Shultz* we held that under any definition of the term, the criterion for "subject" status is squarely met when the independent counsel tells a party that he is in fact a subject. 8 F.3d at 850. In his affidavit to the Court, Dwyer's attorney states that an attorney from IC Walsh's office informed him that "Dwyer, though not a target of the investigation, was nonetheless one of the subjects and could face possible criminal charges." Schippers' Affidavit at 4. Accordingly, Dwyer qualifies as a subject under the Act.

### B. Fees Incurred "During" the Investigation

■ Dwyer seeks fees for representation from May 1987 to February 1988. The court has identified the maximum time for which fees can be sought as spanning from the time an IC begins an investigation of an individual to the deadline for filing comments to the final report. *See, e.g., In re Olson*, 884 F.2d 1415, 1420–22 (D.C. Cir Spec. Div.1989) (per curiam). The relevant period in this case is from December 19, 1986, when IC Walsh was appointed, to the December 3, 1993 deadline for filing comments to the Final Report. Therefore, the fees were incurred "during" the investigation.

### C. Fees Not Incurred "But For" the Requirements of the Act

■ The Independent Counsel statute requires that to be reimbursable, attorneys' fees must be such as "would not have been incurred *but for* the requirements of [the Ethics in Government Act]." 28 U.S.C. § 593(f)(1) (emphasis added). Therefore, "[a]ll requests for attorneys' fees under the Act must satisfy the 'but for' requirement of" the Act. *In re Sealed Case*, 890 F.2d 451, 452 (D.C.Cir. Spec. Div.1989) (per curiam). The purpose of awarding only fees that would not have been incurred "but for" the Act is to ensure that "officials [and here derivative 'subjects'] who are investigated by independent counsels will be subject only to paying those attorneys' fees that would normally be paid by private citizens being investigated for the same offense by" federal executive officials such as the United States Attorney. *Id.* at 452–53 (citing S.Rep. No. 496, 97th Cong., 2d Sess. 18 (1982), *reprinted in* 1982 U.S.C.C.A.N. 3537, 3554 (referring to "fees [that] would not have been incurred in the absence of the [independent counsel] law")).

The Iran/Contra investigation arose as a result of IC Walsh's decision to treat as a criminal conspiracy efforts to circumvent the Boland Amendments, which prohibited the U.S. Government from supporting the Contras in Nicaragua. As we have previously noted, "a politically appointed Attorney General ... would never have subjected [attempts to circumvent the Boland Amendments] to criminal prosecution. Therefore, the investigation would never have occurred ... 'but for' the appointment of the Independent Counsel." *Dutton*, 11 F.3d at 1080.

Dwyer's activities involving North and the Lebanon funds were within the scope of IC

Walsh's investigation of alleged attempts to circumvent the Boland Amendments by supplying military aid to the Contras. IC Walsh has stated that "some of the funds that we traced to [Dwyer] were raised in connection with Contra support. It was the tracing of these funds that exposed Dwyer to possible investigation." Report of IC at 3. Therefore, Dwyer would not have been investigated, and attorneys' fees would not have been incurred, "but for" the appointment of the independent counsel.[2]

### D.  Fees are "Reasonable" under the Act

■  We must determine whether the time expended by Dwyer's attorney on Dwyer's representation was reasonable, and whether the attorney charged a reasonable rate. *In re Meese*, 907 F.2d 1192, 1201 (D.C.Cir. Spec. Div.1990) (per curiam).

■  As to the reasonableness of time expended, in support of the petition Dwyer's attorney has submitted two separate billing documents: the first is a set of monthly statements from June, 1987 to March, 1988; the second is a document entitled "Revised Accounting for Services Rendered and Costs Incurred," covering the same time period. For the reasons stated below neither of these documents is sufficient for the awarding of fees, and we have to look elsewhere for verification of the reasonableness of time billed.

The monthly statements submitted by Dwyer's attorney are woefully inadequate: each one contains the same paragraph that provides only an exceedingly general description of the legal work performed and which mentions only services rendered in connection with the congressional investigation of the Iran initiative; there is no mention whatsoever of the Independent Counsel's investigation. These monthly statements are thus deficient for two reasons. First, we have held previously that fees incurred in connection with congressional proceedings are not reimbursable under the Act. *In re North (Gadd Fee Application)*, 12 F.3d 252, 256–57

(D.C.Cir. Spec. Div.1994) (per curiam); *In re North (Gardner Fee Application)*, 30 F.3d 143, 147 (D.C.Cir. Spec. Div.1994) (per curiam). Second, as we have also held previously, adequate documentation of legal work performed is a necessary ingredient for the reimbursement of attorneys' fees, *In re Meese*, 907 F.2d at 1204, and inadequate documentation "makes it impossible for the court to verify the reasonableness of the billings, either as to the necessity of the particular service or the amount of time expended on a given legal task," *In re Sealed Case*, 890 F.2d at 455.

The second billing document submitted lists the legal work performed in somewhat more detail, and includes references to the Independent Counsel's investigation. However, for each month the document lists only cumulative amounts of time expended and money owed, and does not indicate how much time was spent, or how much money was charged, for any particular task. This too is inadequate documentation upon which no fee reimbursement can be based. *In re Sealed Case*, 890 F.2d at 455; *see also In re Donovan*, 877 F.2d 982, 994 (D.C.Cir. Spec. Div. 1989) (per curiam) (requiring that fee applications include "a detailed description of the subject matter of the work" performed).

The insufficiency of these billing documents would ordinarily bar any fee recovery. However, a close reading of the submissions presented to the court reveals that the petitioner and the Independent Counsel are in agreement that for a very short period of time Dwyer's attorney was working almost exclusively on the Independent Counsel's investigation of Dwyer, and we will reimburse him for that time.

■  Dwyer's attorney was required to obtain a security clearance for his representation of Dwyer in the Independent Counsel's investigation. On July 30, 1987, he underwent a briefing in Washington, D.C., for this clearance. Therefore, we will order reimbursement for fees for that day.

---

**2.**  Dwyer's attorney admits that virtually all of the costs incurred prior to August, 1987 (approximately $35,000 of the reimbursement request) would have been incurred in his representation of Dwyer for the congressional investigations of

Iran/Contra alone, even if no independent counsel had been appointed. Response at 3. These costs would have been incurred regardless of the Independent Counsel's investigation, and therefore are not reimbursable.

We will also order reimbursement for representation in Washington on August 10–13 and 27–28, 1987, when counsel met with IC Walsh's staff and performed other activities related to the IC's investigation. For each of these days we will allow recovery for six hours of work.

We will not, however, allow reimbursement of travel expenses for these time periods. Dwyer's attorney practiced in Chicago, traveling to Washington, D.C., for the abovementioned time periods. Expenses for such travel are not reimbursable "in the absence of some showing that local counsel could not have rendered the service involved and thereby obviated the necessity of employing an attorney" who incurs costs traveling from his home to the work site. *In re North (Bush Fee Application)*, 59 F.3d 184, 194 (D.C.Cir. Spec. Div.1995) (per curiam). Dwyer has made no such showing and could easily have retained counsel here in Washington, D.C. where, we have previously noted, there is no shortage of lawyers. *Id.*

For the same reason, we do not find the hourly rate charged by Dwyer's attorney to be reasonable. Dwyer was billed at the rate of $300 per hour. In his affidavit Dwyer's attorney states that this was his fee for matters handled outside Chicago; his regular rate for matters in Chicago was $200 per hour. Since we can discern no legitimate reason why outside counsel was retained in this case, *supra*, we will order reimbursement at the attorney's regular hourly rate of $200, which is in the range of rates we have previously held to be reasonable for representation during IC Walsh's investigation. *See Gardner*, 30 F.3d at 146; *In re North (Armitage Fee Application)*, 50 F.3d 42, 44 (D.C.Cir. Spec. Div.1995) (per curiam).

## Final Calculations

Taking into consideration the days and rates to be reimbursed mentioned above, we arrive at the following final total for reimbursement of attorneys' fees:

| Date | Fees |
| --- | --- |
| July 30, 1987 | $1200 |
| August 10–13 | $4800 |
| August 27–28 | $2400 |
| Total | $8400 |

## Conclusion

Based on the foregoing analysis we will grant Dwyer's petition in part and award $8400 for attorneys' fees.